UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Bruno Magli IP Holdings, LP,

    Plaintiff-Counter Defendant,

–v–

DMODA NY, Inc.,

    Defendant-Counter Plaintiff.



18-CV-3306 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

On June 7, 2018, Plaintiff-Counter Defendant Bruno Magli IP Holdings, LP ("Bruno Magli") filed a motion to dismiss Defendant-Counter Plaintiff DMODA NY, Inc. ("DMODA")'s counterclaims in this case. Dkt. No. 30. For the following reasons, Bruno Magli's motion is denied.

## I. Background

### A. Factual Background

The Court takes the following facts from DMODA's Amended Counterclaims ("Am. Counter."), Dkt. No. 41. DMODA is a Florida corporation with its principal place of business in Miami, Florida. Am. Counter. ¶ 2. Bruno Magli is a limited partnership with its principal place of business in New York, New York. Am. Counter. ¶ 3.

In 2015, representatives from Bruno Magli and Mr. Diego Stecchi met on several occasions in Bruno Magli's New York office. Am. Counter. ¶ 7. Stecchi is the managing director of Luxury Retail Partners, LLC ("LRP"), and the President of DMODA. Am. Counter. ¶ 19. LRP and DMODA are affiliate companies. *See* Am. Counter. ¶ 17. During one of the

1

meetings at Bruno Magli's New York office, Bruno Magli offered to Stecchi the opportunity to acquire a license to sell Bruno Magli products at retail stores in the United States. Am. Counter. ¶ 8. Stecchi accepted the offer. Am. Counter. ¶ 9. On or about June 1, 2015, Bruno Magli and LRP entered into a license agreement (the "License Agreement"), which granted LRP a non-exclusive license to sell Bruno Magli Products at retail stores in the United States. Am. Counter. ¶ 11. The License Agreement was signed by Stecchi as the managing director of LRP, and executed in New York. Am. Counter. ¶¶ 12-13.

The License Agreement contemplated a onetime only assignment of the entire License Agreement to an affiliate of LRP. Am. Counter. ¶ 14. On June 28, 2016, LRP entered into an agreement with DMODA (the "Assignment Agreement") that assigned all of LRP's "right, title and interest in and to the License Agreement" to DMODA. Am. Counter. ¶ 18.

According to DMODA, the License Agreement created a franchise relationship between DMODA and Bruno Magli. *See* Am. Counter. ¶¶ 34-56. In light of this franchise relationship, DMODA alleges two causes of action. First, DMODA alleges that under the New York Franchise Sales Act, N.Y. Gen. Bus. Law § 683, *et seq.*, as a franchisor, Bruno Magli was obligated to furnish a franchise disclosure document prior to the signing of the License Agreement (Count One). *See* Am. Counter. ¶¶ 65-73. Accordingly, DMODA is entitled to rescission of the License Agreement and damages. *See id.* Second, DMODA alleges that under the Florida Deceptive and Unfair Trade Practices Act, Bruno Magli was required to provide the same franchise disclosure document (Count Two). *See* Am. Counter. ¶¶ 74-79. Accordingly, DMODA is entitled to damages. *See id.*

B.    **Procedural Background**

On March 12, 2018, Bruno Magli commenced this action in the Supreme Court of the State of New York. *See* Dkt. No. 1. Bruno Magli asserts various breach of contract and service mark infringement claims against DMODA. *See* Dkt. No. 5. On March 16, 2018, DMODA removed the case to this Court. *See* Dkt. No. 1. On April 20, 2018. Bruno Magli filed an amended complaint. Dkt. No. 5. On May 18, 2018, DMODA filed an answer to the amended complaint, Dkt. No. 29, and filed counterclaims against Bruno Magli, Dkt. No. 28. On June 7, 2018, Bruno Magli moved to dismiss the counterclaims. Dkt. No. 30. After Bruno Magli moved to dismiss the counterclaims, on June 27, 2018, DMODA amended its counterclaims. Dkt. No. 41. Bruno Magli indicated in a letter on July 9, 2018, that it intended to rely on its initial motion to dismiss in response to DMODA's amended counterclaims. Dkt. No. 45. On July 20, 2018, DMODA filed an opposition to Bruno Magli's motion to dismiss. Dkt. No. 46. On July 27, 2018, Bruno Magli filed a reply memorandum of law in further support of its motion. Dkt. No. 49.

## II. Legal Standard

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint. *See Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018). When a party moves to dismiss under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N. Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Although this standard does not require "detailed factual allegations," it "requires more than labels and conclusions." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). In resolving a motion to dismiss, review is limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

**III. Discussion**

    **A. Standing**

Bruno Magli's main argument is that the initial franchise agreement was entered into between Bruno Magli and non-party, LRP, and therefore DMODA cannot assert any injuries under the New York Franchise Sales Act or the Florida Deceptive and Unfair Trade Practices Act. *See* Dkt. No. 31 ("Bruno Magli Br.") at 10-11; Dkt. No. 49 ("Bruno Magli Reply Br.") at 3-9. Although Bruno Magli does not explicitly present the issue this way, its position amounts to an argument regarding DMODA's standing to bring the two claims in the case. The Court disagrees with Bruno Magli's contention that DMODA does not have standing to bring these claims, as explained below. DMODA has sufficiently alleged that it was assigned the claims by LRP.

    **1. Legal Standard**

Article III restricts federal courts' authority to hearing only disputes involving "Cases" and "Controversies." U.S. Const. art. III, §2. Accordingly, a party invoking a court's jurisdiction must have standing to sue. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 188 (2000). In order to have standing, a plaintiff must establish three elements. A plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations

omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* And at the pleading stage, a plaintiff need only "clearly allege facts demonstrating each element." *Id.*

As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) ("Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."). However, courts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an "injury-in-fact." *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) (observing that, in certain circumstances, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *Connecticut v. Physicians Health Servs. of Conn.*, Inc., 287 F.3d 110, 117 (2d Cir.2002) ("[A] valid and binding assignment of a *claim* (or a portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee." (emphasis in original)).

### 2. DMODA Has Sufficiently Alleged That It Was Assigned Claims Arising From the License Agreement

As discussed above, Bruno Magli's primary argument is that the initial franchise agreement was entered into between Bruno Magli and non-party, LRP, and therefore DMODA cannot assert any injuries under the New York Franchise Sales Act or the Florida Deceptive and Unfair Trade Practices Act. However, Bruno Magli's argument almost entirely ignores that LRP could assign its claims to DMODA, and therefore, DMODA would have standing to bring the

claims under the New York Franchise Sales Act or the Florida Deceptive and Unfair Trade Practices Act. *See Vermont*, 529 U.S. at 765. New York General Obligations Law § 13–101 allows certain causes of action under New York law to be freely assigned. Any claim can be transferred pursuant to § 13–101 unless it is (1) a claim for personal injury, (2) founded upon a grant or interest in real property which is void by state statute, or (3) otherwise expressly forbidden by a federal or state statute or contravenes public policy. N.Y. G.O.L. § 13–101. "Any act or words are sufficient which show an intention of transferring the [cause of action] to the assignee." *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976). Similarly, "[u]nder Florida law, parties can assign causes of action derived from a contract or a statute." *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So. 2d 557, 559 (Fla. 1997). Accordingly, there is nothing under New York law or Florida law that, at this stage, disallows assignment of these claims.

Bruno Magli simply argues that DMODA does not have standing to "assert claims" of an "affiliated company"—in this case, LRP. Bruno Magli Reply Br. at 3. Bruno Magli cites to several cases that establish under New York law, corporate affiliation does not give a company a right to bring a suit on behalf of an affiliated company. *See id.* (citing cases). But that is not what is alleged here. Rather, the right to the claims under the New York Franchise Sales Act or the Florida Deceptive and Unfair Trade Practices Act were allegedly *assigned* from LRP to DMODA via the Assignment Agreement. *See* Am. Counter. ¶ 18. DMODA is not trying to bring a claim on behalf of LRP. Rather, DMODA is asserting claims that it alleges it was assigned by LRP. *See id.*

Bruno Magli briefly argues, in its reply, that LRP assigning its "right, title and interest in and to the License Agreement" via the Assignment Agreement is insufficient for the Court to

conclude that LRP assigned *all claims* arising from the License Agreement to DMODA. *See* Bruno Magli Reply Br. at 7-8. However, Bruno Magli cites no contractual language nor case law relevant to the statutory schemes here to suggest why that would be the case. Additionally, Bruno Magli has not provided the Court with any choice of law analysis in order for the Court to evaluate what law to apply when considering whether, as a matter of law, all of the claims were properly assigned via the Assignment Agreement. Accordingly, Bruno Magli's motion to dismiss must be denied to the extent it argues that DMODA has not sufficiently alleged that it was assigned claims arising from the License Agreement. *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (a court's role is not to act as an advocate or otherwise "research . . . legal theor[ies]" on behalf of a litigant); *Glidepath Holding v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 n. 9 (S.D.N.Y. 2007) (The Court "has no obligation to consider an argument for which a party has cited no legal authority.").

### B. The Court Cannot Consider Bruno Magli's Argument Regarding A Termination Agreement

Bruno Magli also argues that DMODA's counterclaims must be dismissed because any claims arising from the License Agreement were released by LRP. *See* Bruno Magli Reply Br. at 9-10. Bruno Magli contends that after LRP assigned the License Agreement to DMODA, LRP entered into a termination agreement with Bruno Magli, where LRP agreed to release Bruno Magli from any claim with respect to the License Agreement. *See* Bruno Magli Br. at 11-13. According to Bruno Magli, LRP agreed to this release on behalf of itself and its affiliates, which would include DMODA. *See id.* However, the Court cannot consider this argument at the motion to dismiss stage, because DMODA has not included any factual allegations about the termination agreement, or incorporated the termination agreement into the amended counterclaim by reference. *See McCarthy*, 482 F.3d at 191.

Accordingly, Bruno Magli's motion to dismiss is denied to the extent Bruno Magli argues that any claims arising from the License Agreement were released by a separate termination agreement signed by LRP.

**IV. Conclusion**

For the foregoing reasons, Bruno Magli's motion to dismiss is DENIED. This resolves Docket Number 30. Within two weeks of the date of this Opinion & Order, the parties are ordered to meet and confer regarding settlement. The parties are reminded that the case is already referred to the Magistrate Judge for settlement purposes. *See* Dkt. No. 42. A post-discovery status conference in this case is scheduled for April 5, 2019. *See* Dkt. No. 68. At the April 5, 2019 conference, the Court will consider the parties' application to move for summary judgment in this case, and set any further deadlines.

SO ORDERED.

Dated: March ___, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge